UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

---------------------------------------------------------------x

SUZANNE STONE MARSHALL, ADELE      :
FOX, MARSHA PESHKIN, and RUSSELL   :
OASIS, individually and on behalf of a class of  :
similarly situated Plaintiffs,                :
                                  :
               Plaintiffs,             :
                                    :
            - against -            :
                                    :    Case No.: 10-80252-CV-KLR
CAPITAL GROWTH COMPANY;         :
DECISIONS, INCORPORATED;        :
FAVORITE FUNDS;                :
JA PRIMARY LIMITED PARTNERSHIP;  :
JA SPECIAL LIMITED PARTNERSHIP;   :
JAB PARTNERSHIP;              :
JEMW PARTNERSHIP;            :
JF PARTNERSHIP;                :
JFM INVESTMENT COMPANIES;      :
JLN PARTNERSHIP;              :
JMP LIMITED PARTNERSHIP;        :
JEFFRY M. PICOWER SPECIAL       :
COMPANY;                    :
JEFFRY M. PICOWER, P.C.;         :
THE PICOWER FOUNDATION;       :
THE PICOWER INSTITUTE OF MEDICAL :
RESEARCH;                   :
THE TRUST F/B/O GABRIELLE H.     :
PICOWER;                    :
BARBARA PICOWER, individually, and as  :
Executor of the Estate of Jeffry M. Picower,  :
and as Trustee for the Picower Foundation and :
for the Trust f/b/o Gabriel H. Picower.    :
                                    :

---------------------------------------------------------------x

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR EMERGENCY MOTION TO STAY THIS ACTION OR, ALTERNATIVELY,
FOR AN EXTENSION OF TIME AND IN OPPOSITION TO PLAINTIFFS' MOTION
FOR A PRELIMINARY INJUNCTION AND REQUEST FOR LEAVE TO TAKE
DEPOSITIONS**

Defendants Capital Growth Company, Decisions, Incorporated, Favorite Funds, JA Primary Limited Partnership, JA Special Limited Partnership, JAB Partnership, JEMW Partnership, JF Partnership, JFM Investment Companies, JLN Partnership, JMP Limited Partnership, Jeffry M. Picower Special Company, Jeffry M. Picower, P.C., The Picower Foundation, The Picower Institute of Medical Research, The Trust f/b/o Gabrielle H. Picower, Barbara Picower, individually, and as Executor of the Estate of Jeffry M. Picower, and as Trustee for the Picower Foundation and for the Trust f/b/o Gabrielle H. Picower (collectively, the "Picower Parties") hereby respectfully submit this Reply Memorandum of Law in Further Support of Their Emergency Motion to Stay This Action or, Alternatively, for an Extension of Time and in Opposition to Plaintiffs' Cross-Motion for a Preliminary Injunction and Request for Leave to Take Depositions.

## PRELIMINARY STATEMENT

In Plaintiffs' Opposition to Defendants' Motion to Stay and Cross-Motion for a Preliminary Injunction and Request for Leave to Take Depositions (Dkt. No. 33), Plaintiffs[1] effectively seek to strip the New York Bankruptcy Court of jurisdiction to enforce its own Permanent Injunction and automatic stay, and instead have this Court make those determinations. As set forth in greater detail below, for reasons of judicial economy and deference to the court that issued the orders, this Court should stay this action to allow the New York Bankruptcy Court to decide whether Plaintiffs' new claims violate the Permanent Injunction and the automatic stay.

Likewise, this Court should deny Plaintiffs' request for a preliminary injunction and for pre-litigation discovery of non-parties. Despite their bluster, Plaintiffs have utterly failed

---

[1] Unless noted otherwise, capitalized terms herein have the same meaning as set forth in Defendants' Emergency Motion to Stay This Action or, Alternatively, for an Extension of Time, filed on February 18, 2014 (Dkt. No. 29) (the "Motion to Stay/Extend").

to meet their burden of establishing that they are entitled to the extraordinary relief of a preliminary injunction that would bar the New York Bankruptcy Court – which expressly retained jurisdiction over its Preliminary Injunction order – from enforcing that order or determining its scope.  First, Plaintiffs have failed to show any likelihood of success on the merits.  Second, Plaintiffs have failed to show that they will be irreparably harmed if the New York Bankruptcy Court is not enjoined from interpreting the scope of its own order.  Third, Plaintiffs have failed to identify any equities that weigh in their favor.  Fourth, Plaintiffs have failed to present any reason why discovery should be conducted of non-parties even before it is determined that Plaintiffs may reopen this case.

In short, Plaintiffs have set forth no facts or arguments that support their claims for extraordinary relief.  Consequently, for the reasons herein and in the Picower Parties' Motion to Stay/Extend, this action should be stayed pending a determination by the New York Bankruptcy Court as to whether Plaintiffs' Second Amended Complaint states derivative or independent claims.[2]  In the alternative, Defendants' time to respond should be extended to April 7, 2014.  In either case, the Court should deny Plaintiffs' request to conduct non-party depositions even before it is determined that the case can proceed.

## BACKGROUND

1.    On February 5, 2014, Plaintiffs filed a motion to reopen this putative class action and for leave to file a Second Amended Complaint, after the Second Circuit Court of Appeals affirmed the decisions by the New York Bankruptcy Court and SDNY District Court that the

---

[2] In the event that the Court stays this action, the motions filed on February 19, 2014 by the law firm of Beasley Hauser Kramer & Galardi, P.A. seeking an order of transfer and consolidation (Dkt. No. 31) and to disqualify Becker & Poliakoff, P.A. as counsel for Plaintiffs (Dkt. No. 32), would also be stayed, and in the event that Plaintiffs' proposed Second Amended Complaint is found to be "duplicative or derivative" of the Picower Claims, those motions would be moot.

claims in the Fox/Marshall Class Actions were impermissibly derivative of the Picower Claims. (Dkt. No. 28.)  The determination as to whether Plaintiffs should be granted leave to file their proposed Second Amended Complaint turns on whether their amended claims would violate the Permanent Injunction issued by the New York Bankruptcy Court.

2.      On February 18, 2014, the Picower Parties filed the Motion to Stay/Extend seeking a stay of this action pending the New York Bankruptcy Court's resolution of a motion that will be brought by the Trustee for a determination that Plaintiffs' proposed Second Amended Complaint would violate the Permanent Injunction, or alternatively, an extension of the Picower Parties' time to respond to Plaintiffs' Motion to Reopen.  (Dkt. No. 29.)

3.      In response, on February 19, 2014, Plaintiffs filed an Opposition to Defendants' Motion to Stay and Cross-Motion for a Preliminary Injunction and Request for Leave to Take Depositions.  (Dkt. No. 33.)  In their Opposition, Plaintiffs seek the extraordinary remedy of a preliminary injunction enjoining the Picower Parties *and* non-parties, including the Trustee, from filing a motion in the New York Bankruptcy Court to enforce its own order.[3]

4.      On February 24, 2014, the Court issued an Order staying this action pending the Court's resolution of the Picower Parties' Motion to Stay/Extend.  (Dkt. No. 37.)

5.      In response to the Court's Order, on February 24, 2014, Plaintiffs filed a Response in Opposition to Defendants' Motion to Stay and Cross Motion for Injunctive and Other Relief, which reiterates the arguments made in Plaintiffs' Opposition.  (Dkt. No. 38.)

---

[3] "Opposition" or "Opp." refers to Plaintiffs' Opposition to Defendants' Motion for Stay and Cross-Motion for a Preliminary Injunction and Request for Leave to Take Depositions, filed on February 20, 2014 (Dkt. No. 33).

## <u>ARGUMENT</u>

**I.     The Scope of the Permanent Injunction Should Be Decided by the New York Bankruptcy Court Before This Court Rules on Plaintiffs' Motion to Reopen**

Before this Court rules on Plaintiffs' Motion to Reopen, this action should be temporarily stayed to allow the New York Bankruptcy Court to determine whether Plaintiffs' proposed Second Amended Complaint would violate that court's Permanent Injunction and the automatic stay.  In their Opposition, Plaintiffs argue that this action should not be stayed because the Second Circuit purportedly "held that Plaintiffs have leave to amend their claims and bring them before this Court" and that Plaintiffs "fought for and won in the Second Circuit . . . the right to proceed in this forum."  (Opp. at 7, 8.)  To the contrary, Plaintiffs did not "win" in the Second Circuit – the Second Circuit *affirmed* the SDNY District Court's order that their claims violated the Permanent Injunction.  The SDNY District Court's order, in turn, *affirmed* the New York Bankruptcy Court's order that Plaintiffs' claims violated the Permanent Injunction.

Moreover, the Second Circuit did *not* hold that Plaintiffs have leave to amend their claims.  To the contrary, the Second Circuit stated expressly that it "intimate[s] no view on an appropriate disposition of any such motion for leave to amend."  *Marshall v. Picard*, 740 F.3d 81, 96 (2d Cir. 2014).

Plaintiffs also incorrectly assert that the Second Circuit "mandated" that this Court has *exclusive* jurisdiction to decide the issue.  However, the Second Circuit could not possibly have taken the view that only this Court, and not the New York Bankruptcy Court, can determine whether Plaintiffs' new claims are "duplicative or derivative" of the Picower Claims, given that the Second Circuit affirmed the New York Bankruptcy Court's ruling on that very issue.  If, as Plaintiffs claim, the Second Circuit decided that this Court somehow has exclusive jurisdiction to decide whether Plaintiffs' claims are "duplicative or derivative" of the Picower

4

Claims, the Second Circuit would have reversed the New York Bankruptcy Court on the grounds that *only* this Court could decide the issue.  In fact, the question as to whether the New York Bankruptcy Court can decide whether Plaintiffs' amended claims are derivative of the Picower Claims was neither briefed by the parties, nor decided by the Second Circuit.

To be sure, both this Court *and* the New York Bankruptcy Court have jurisdiction to decide the scope of the Permanent Injunction.  However, the Picower Parties respectfully submit that this action should be stayed temporarily pending the resolution, in the New York Bankruptcy Court, of the Trustee's motion for a determination as to whether Plaintiffs' proposed Second Amended Complaint would violate the Permanent Injunction and the automatic stay.  Once the New York Bankruptcy Court rules on that motion, this Court can rule on Plaintiffs' Motion to Reopen.  Staying this action pending the New York Bankruptcy Court's ruling would avoid inconsistent rulings that could occur if this Court *and* the New York Bankruptcy Court ruled on the applicability of the Permanent Injunction and automatic stay.

Deference should be given to the New York Bankruptcy Court to resolve this issue because the Permanent Injunction and automatic stay are part of the BLMIS Liquidation, a much larger proceeding involving *hundreds* of other lawsuits that is being centrally administered by the New York Bankruptcy Court.  The New York Bankruptcy Court should be allowed to regulate and enforce the Permanent Injunction and automatic stay as part of its administration of the BLMIS Liquidation.  Moreover, the New York Bankruptcy Court, SDNY District Court and Second Circuit have tremendous institutional knowledge of the myriad complex legal and factual issues arising from the BLMIS Liquidation, including whether claims are duplicative or derivative of the Picower Claims in violation of the Permanent Injunction.

In short, in the interests of judicial economy and deference to the New York Bankruptcy Court's interpretation and enforcement of its own orders, this action should be stayed pending resolution by the New York Bankruptcy Court as to whether Plaintiffs' proposed Second Amended Complaint would violate the Permanent Injunction and automatic stay.[4]

## II.   Plaintiffs Are Not Entitled to a Preliminary Injunction

In addition to opposing the Picower Parties' request for a stay of this action, Plaintiffs now seek a preliminary injunction enjoining the Picower Parties *and* "any persons acting in concert or participating with them pursuant to Fed. R. Civ. P. 65(d)(2)(C)[5], including Trustee Irving Picard, from litigating the subject matter of this case outside the United States District Court for the Southern District of Florida."[6]  (Opp. at 9.)  By seeking to enjoin the Picower Parties *and* the Trustee from filing a motion in the New York Bankruptcy Court for a determination as to whether Plaintiffs' proposed Second Amended Complaint is derivative of the Picower Claims, Plaintiffs, in effect, are seeking to strip the New York Bankruptcy Court of jurisdiction to enforce its own orders.  A party seeking such extraordinary relief bears the burden of establishing "(1) a substantial likelihood of success on the merits; (2) a substantial threat of

---

[4] In the event that the Court declines to stay this action, the Picower Parties respectfully request that the Court extend their time to respond to Plaintiffs' Motion to Reopen to April 7, 2014.  As set forth in the Picower Parties' Motion to Stay/Extend, Plaintiffs' counsel refused to consent to any extension of time.  In their Opposition, Plaintiffs asserted that they would have consented to an extension *if* the Picower Parties had agreed to "make a complete financial disclosure to [Plaintiffs] which will satisfy [Plaintiffs] that [the Picower Parties] have not transferred assets over the last *six years* in order to conceal them."  (Davis Decl. Ex. 2 (emphasis added).)  In other words, the only way that Plaintiffs would consent to an extension of time is if the Picower Parties submitted to immediate and extremely burdensome discovery.  Given that Plaintiffs do not even have leave to replead, their demand for such burdensome and intrusive discovery in exchange for a professional courtesy was patently unreasonable, particularly because Plaintiffs have *no evidence whatsoever* that the Picower Parties have fraudulently concealed assets.

[5] Rule 65(d)(2)(C) provides that a preliminary injunction binds non-parties "who are in active concert or participation with" the parties or their officers, agents, services, employees or attorneys.

[6] Notably, while Plaintiffs' seek to enjoin the Trustee, a non-party to this action, Plaintiffs did not serve their motion for preliminary injunction on the Trustee, nor did they even bother notifying the Trustee that they were filing a motion seeking to enjoin the Trustee from proceeding in the New York Bankruptcy Court.  (*See* Opp. (service list in the Certificate of Service does not include the Trustee).)

irreparable injury; (3) that its own injury outweighs the injury to the nonmovant; and (4) that the injunction would not disserve the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1179 (11th Cir. 2000).  As set forth below, Plaintiffs have failed to satisfy any of these elements.

      **A.**      **Plaintiffs Do Not Have a Substantial Likelihood of Success on the Merits**

Plaintiffs argue that they "are likely to succeed on the merits because the Second Circuit has already ruled that this Court should determine, in the first instance, whether the second amended complaint states a claim." (Opp. at 6.)  However, the threshold question – that needs to be addressed even before this Court can determine whether the second amended complaint states a claim – is whether the proposed claims are barred by the Permanent Injunction and the automatic stay.  The Picower Parties respectfully submit that the New York Bankruptcy Court should address this threshold question.[7]

The New York Bankruptcy Court plainly has jurisdiction to rule on the applicability of its own Permanent Injunction.  (Harris Decl. Ex. B) (New York Bankruptcy Court "retain[s] jurisdiction over any and all disputes arising under or otherwise relating to [this Permanent Injunction].")  What is more, the New York Bankruptcy Court plainly has jurisdiction to determine the applicability of the automatic stay in the BLMIS Liquidation pursuant to Section 362(a) of the Bankruptcy Code.  Accordingly, Plaintiffs are not likely to succeed on the merits of their claim that this Court has exclusive jurisdiction to determine if Plaintiffs' proposed Second Amended Complaint would violate the Permanent Injunction and automatic stay.

---

[7] In their Opposition, Plaintiffs cite numerous cases for the proposition that this Court has the power the enjoin the Trustee, who is a non-party to this action. (*See* Opp. at 6-7.)  However, the Picower Parties do not deny that this Court has the power to enjoin non-parties.  Rather, they are opposed to an injunction against the Trustee because Plaintiffs have not established the necessary elements for a preliminary injunction.

B.    **Plaintiffs Will Not Suffer Irreparable Harm If the New York Bankruptcy Court Decides the Applicability of Its Own Permanent Injunction and the Automatic Stay**

In addition to failing to establish a likelihood of success on the merits, Plaintiffs are not entitled to a preliminary injunction because they have failed to establish that they would suffer irreparable harm in the absence of a preliminary injunction.

First, Plaintiffs argue that they will suffer irreparable harm because they will be deprived of "the right to proceed in this forum." (Opp. at 7.) To the contrary, in the event that this action is stayed, this Court still would decide Plaintiffs' Motion to Reopen after the New York Bankruptcy Court rules on whether the proposed Second Amended Complaint violates the Permanent Injunction and automatic stay. In the event that the proposed Second Amended Complaint is found not derivative of the Picower Claims, Plaintiffs then would be free to proceed with their claims in this Court. Accordingly, Plaintiffs will not be irreparably deprived of their right to proceed in this Court in the absence of a preliminary injunction.

Second, Plaintiffs argue that they will suffer irreparable harm because "it would take another four years" to fully resolve the Trustee's motion to enforce the Permanent Injunction in the New York Bankruptcy Court. (Opp. at 7.) Not only is this argument based on pure conjecture, it also ignores the possibility that it could take just as long to litigate the applicability of the Permanent Injunction in Florida. Had Plaintiffs sought leave to replead after the New York Bankruptcy Court's determination that their claims were derivative, instead of appealing twice from that order, there would have been far fewer delays in reaching a conclusion in these cases. Likewise, had Plaintiffs not sought repeated extensions of time to file briefs in support of its appeals, the cases could have come to a faster conclusion. Accordingly, Plaintiffs themselves are responsible for any delays in trying to salvage their impermissibly derivative claims.

8

Putting aside that there is no way of knowing whether it would be faster to litigate in Florida or New York, there are numerous factors that could result in faster resolution in New York than in Florida.  For one, the New York Bankruptcy Court, SDNY District Court and Second Circuit already have familiarity with the scope of the Permanent Injunction and automatic stay, having ruled on that issue in Plaintiffs' prior attempt to assert derivative claims. In addition, when the New York federal courts ruled on the scope of the Permanent Injunction, they also ruled on Plaintiffs' challenge to the New York Bankruptcy Court's constitutional authority to issue the Permanent Injunction.  Now that the validity of the Permanent Injunction has been resolved, the New York federal courts will have fewer issues to address.

Third, Plaintiffs argue – with no evidentiary support of any kind – that unless the Trustee is enjoined from bringing his motion in the New York Bankruptcy Court, the Picower Parties "will be able to continue to fraudulently transfer assets and insulate earlier fraudulent transfers."  (Opp. at 7-8.)  Plaintiffs' reckless and incendiary accusation against the Picower Parties has no basis in fact.[8]  Accordingly, Plaintiffs cannot establish that they would suffer irreparable harm as a matter of law if their motion for preliminary injunction were denied.

C.      **The Potential Harm to the Picower Parties Outweighs Any Alleged Harm to Plaintiffs**

Another reason that Plaintiffs are not entitled to a preliminary injunction is that the potential harm to the Picower Parties outweighs any alleged harm to Plaintiffs.  The Picower Parties settled the Trustee's and DoJ's claims against them for $7.2 *billion*.  In approving the settlement, the New York Bankruptcy Court found that it "represents a significant recovery for the victims of the Ponzi scheme" and that "*one hundred percent* of the net withdrawals received

---

[8]   For this same reason, the New York Bankruptcy Court admonished Plaintiffs and their counsel, Ms. Chaitman, to avoid referring to Mr. Picower as a "criminal" in proceedings in that court.  This Court should do the same.

by the Picower BLMIS Accounts will have been returned for distribution to Madoff victims."
(*Picard v. Picower*, Adv. Pro. No. 09-1197, Dkt. No. 43 at 4 (S.D.N.Y. Bankr. Jan. 13, 2011)
(emphasis added).)  In other words, pursuant to the Settlement Agreement, the Picower Parties
returned *all* of their net profits from Madoff's Ponzi scheme, all of which are to be distributed to
Madoff's victims.  In affirming the New York Bankruptcy Court's approval of the Settlement
Agreement, the SDNY District Court noted the importance of enjoining claims that are
"duplicative or derivative" of the estate's claims to avoid "double liability."  *Fox v. Picard*, 848
F. Supp. 2d 469, 490 (S.D.N.Y. 2012).

After paying $7.2 billion to settle the Picower Claims, the Picower Parties are
entitled to repose.  Such repose from "double liability" would be threatened if Plaintiffs were
permitted to do an "end run" around the New York Bankruptcy Court's jurisdiction to decide
disputes arising from the Permanent Injunction, which was issued pursuant to the Settlement
Agreement.  Notably, Plaintiffs Fox and Marshall have already had their day in court through
their filing of customer claims in the BLMIS Liquidation.  Marshall's customer claim was
deemed allowed by the Trustee on July 24, 2009 in the amount of $30,000, the amount that she
lost in Madoff's Ponzi scheme.  *See Picard v. Fox*, 429 B.R. 423, 429 (S.D.N.Y. Bankr. 2010).
Fox's customer claims were denied because she profited from Madoff's Ponzi scheme.  *See Fox
v. Picard*, 848 F. Supp. 2d 469, 474 (S.D.N.Y. 2012).  Plaintiffs now seek a "second bite" by
bringing this putative class action against the Picower Parties, to the Picower Parties' detriment.

By contrast, the only purported "harm" identified by Plaintiffs is that they prefer
to have this Court decide whether their new claims violate the Permanent Injunction and
automatic stay, rather than the New York Bankruptcy Court.  The Picower Parties' interest in

avoiding "double liability" outweighs any interests Plaintiffs have identified.  Accordingly, Plaintiffs have failed to establish that the balance of the equities weighs in their favor.

> ### D.     The Preliminary Injunction Sought by Plaintiffs Would Disserve the Public Interest

The final reason that Plaintiffs are not entitled to a preliminary injunction is that the relief they seek would disserve the public interest.  There is a strong public interest in not interfering with the New York Bankruptcy Court's centralized administration of the BLMIS Liquidation.  Congress enacted the Bankruptcy Code, which provides for centralize administration of bankruptcies by the Bankruptcy Courts while pending litigation against the debtor in other courts is automatically stayed.  Such centralized administration by the New York Bankruptcy Court is even more critical in the BLMIS Liquidation, which involves restitution to victims to a massive Ponzi scheme of historic proportions.  Issuing a preliminary injunction that would effectively enjoin the New York Bankruptcy Court from regulating the Permanent Injunction and the automatic stay in the BLMIS Liquidation would not serve the public interest.

Plaintiffs argue that a preliminary injunction is necessary for this Court "to preserve its own jurisdiction."  (Opp. at 8.)  To the contrary, this Court is not being stripped of its jurisdiction to adjudicate this dispute – the Picower Parties are merely seeking a temporary stay of this action pending the New York Bankruptcy Court's decision whether Plaintiffs' proposed Second Amended Complaint violates the Permanent Injunction.  After the New York Bankruptcy Court makes that determination, this Court can decide Plaintiffs' Motion to Reopen, if the claims in Plaintiffs' proposed Second Amended Complaint are deemed independent of the Picower Claims.

### III.    Plaintiffs Are Not Entitled to Discovery Before They Are Granted Leave to File an Amended Complaint

In addition to seeking a preliminary injunction, Plaintiffs also request leave to take the depositions of non-parties April Freilich and Bernard L. Madoff.  (Opp. at 8-9.)  It would be premature and prejudicial to allow Plaintiffs to take depositions even before they have been given leave to file their new claims.  *See United Tech. Corp. v. Mazer*, No. 05-80980, 2007 WL 788877, at *1 (S.D. Fla. Mar. 14, 2007) (Ryskamp, J.) ("Courts must also consider the status of a witness as a non-party when determining the degree of burden; the status of the person as a non-party is a factor often weighing against disclosure."); *Cantaline v. Raymark Indus., Inc.*, 103 F.R.D. 447, 450 (S.D. Fla. 1984) ("[A] Court must be sensitive to the potential burden imposed on a non-party during discovery . . . .") (quoting *Pollitt v. Mobay Chem. Corp.*, 95 F.R.D. 101, 105 (S.D. Ohio 1982)).

Plaintiffs have made no showing – evidentiary or otherwise – to suggest that either Ms. Freilich or Mr. Madoff would be unavailable after Plaintiff are given leave to amend (if such relief is ever granted).  Moreover, Mr. Madoff's testimony would have virtually no probative value given his utter lack of credibility as a known fraudster and criminal.

Furthermore, contrary to Plaintiffs' assertion that "Defendants will not suffer any prejudice by the taking of these non-party depositions at this time" (Opp. at 9), Defendants plainly would be prejudiced if they are required to expend the resources preparing for and attending these proposed depositions, especially if Plaintiffs ultimately are denied leave to file their proposed Second Amended Complaint.  Accordingly, Plaintiffs' request for leave to take the depositions of Ms. Freilich and Mr. Madoff should be denied.

## CONCLUSION

For the foregoing reasons and the reasons stated in the Picower Parties' Motion to Stay/Extend, the Picower Parties respectfully request that this Court (i) stay this action pending the resolution by the New York Bankruptcy Court of the Trustee's motion to enforce the Permanent Injunction and the automatic stay, or, in the alternative, extend the Picower Parties' time to respond to Plaintiffs' Motion to Reopen to April 7, 2014; (ii) deny Plaintiffs' motion for a preliminary injunction; and (iii) deny Plaintiffs' request for leave to take depositions.

Respectfully submitted,

HOLLAND & KNIGHT LLP
Attorneys for the Picower Parties
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: 305-374-8500
Facsimile: 305-789-7799

By: s/Sanford L. Bohrer
Sanford L. Bohrer (FBN 160643)

Of counsel:

SCHULTE ROTH & ZABEL LLP
William D. Zabel
Marcy Ressler Harris
Frank LaSalle
Michael Kwon
919 Third Avenue
New York, New York  10022
(212) 756-2000

## CERTIFICATE OF SERVICE

I certify that on February 25, 2014, I filed a copy of the foregoing with the Clerk of Court using CM/ECF, which will serve a copy on all counsel of record of the foregoing.

s/Sanford L. Bohrer

#28148243_v1

13